UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARFIELD LAWSON,

        Petitioner,                                          Hon. Richard Alan Enslen

v.                                                         Case No. 1:02-CV-519

DAVID GUNDY,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Lawson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Lawson's petition be **denied**.

**BACKGROUND**

        On August 31, 1997, Petitioner was an inmate at the Saginaw County Jail. (Trial Transcript, May 5, 1999, 12-17). In the early morning hours of August 31, 1997, Petitioner was escorted by Deputy Sheriff Larry Griffin to a local hospital to have x-rays taken of his allegedly injured hand. (Tr. 17, 22-24). After the x-rays were taken, Petitioner was permitted to use the bathroom. (Tr. 28-29).

        After using the bathroom, Petitioner attacked Griffin. (Tr. 29). Petitioner knocked

1

Griffin to the ground and repeatedly struck him in the face and stomach. (Tr. 29-30, 49, 52, 66-67, 91-92, 105-07). Petitioner then took Griffin's keys and gun. (Tr. 29-31, 66-67, 92, 107). Petitioner pointed the weapon at Griffin and attempted to fire it. (Tr. 32-33). Petitioner was unable to fire the weapon, however, at which point he ran out of the hospital. (Tr. 33-35).

Petitioner was observed removing his orange prison uniform as he ran away from the hospital. (Tr. 80-83, 118-20). Police recovered Griffin's weapon, Petitioner's leg-irons (and the keys thereto), his orange jail uniform and jail-issued wristband in the general vicinity of the hospital. (Tr. 152-53, 156-58, 176-84). Petitioner was recaptured seven days later. (Trial Transcript, May 5, 1999, 165-68; Trial Transcript, May 6, 1999, 6-9). Petitioner testified at trial that he had no memory of the events in question. (Trial Transcript, May 6, 1999, 51-68).

Following a jury trial, Petitioner was convicted of the following offenses: (1) breaking jail with violence or, in the alternative, assaulting an employee of place of confinement; (2) disarming a peace officer; (3) armed robbery; (4) assault with intent to murder; (5) receiving, possessing, or concealing a stolen firearm; and (6) possessing a firearm during the commission of a felony. (Trial Transcript, May 6, 1999, 68-69). On the conviction for assaulting a jail employee, Petitioner was sentenced to serve fifteen years in prison. (Sentencing Transcript, June 7, 1999, 9). For possessing a firearm during the commission of a felony, Petitioner was sentenced to two years in prison. (Tr. 9-10). Petitioner was sentenced to life in prison for each of the remaining convictions. (Tr. 9). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I. The trial court abused its discretion by admitting evidence of other bad acts pursuant to MRE 404(b) when such evidence was substantially more prejudicial than probative.

2

> II. The trial court violated Defendant's 14th Amendment right to due process by sentencing him based on inaccurate information that was contained in the presentence investigation report.
>
> III. Defense counsel was ineffective for failure to adhere to the requirements of MCL 768.20A to insure an instruction of diminished capacity and as a result violated Defendant's right to effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Lawson*, No. 220406, Opinion (Mich. Ct. App., Apr. 20, 2001). Asserting the same claims, Petitioner then moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Lawson*, No. 119304, Order (Mich., Nov. 30, 2001).

On July 18, 2002, Petitioner submitted the present petition for writ of habeas corpus in which he asserts the same three claims identified above. On March 4, 2003, Lawson informed the Court that he had recently discovered "additional issues" which had not been properly exhausted in state court. (Dkt. #30). Accordingly, Lawson sought to dismiss and/or amend his petition. *Id.* The Court denied Lawson's request to dismiss his petition. (Dkt. #32). The Court noted that because the limitations period had long since expired "the practical effect of [dismissing Lawson's petition] would be to preclude Petitioner from obtaining review in this Court of [his habeas] claims." Instead, the Court instructed Petitioner that it "will stay the present matter, so as to permit Petitioner to exhaust in state court his newly discovered claims, **provided that Petitioner complies with the instructions detailed below**." *Id.* Petitioner failed to comply with these instructions, however, and on June 13, 2005, the Honorable Richard Alan Enslen ruled that "Petitioner is denied permission

3

to amend his petition to add new claims and the Court will review only the merits of the claims set forth in the original petition." (Dkt. #37).

## **STANDARD OF REVIEW**

Lawson's petition, filed July 18, 2002, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set

of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court

5

authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

## ANALYSIS

**I.        Evidentiary Claim**

In addition to the evidence described above, the prosecution introduced evidence regarding another incident in which Petitioner attacked several guards at the Saginaw County Jail. (Trial Transcript, May 6, 1999, 10-39). In this particular incident, Petitioner attacked several guards with a homemade weapon and stated to at least one of the guards that he would kill him. (Tr. 10-39). Petitioner asserts that the trial court "abused its discretion" by admitting this evidence.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted).

Michigan Rule of Evidence 404(b) provides that:

(1)   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In arguing for the admission of the evidence in question, the prosecution argued that it was relevant to assessing whether Petitioner acted with the intent to commit murder when he attacked the deputy and attempted to shoot him with his own weapon. (Trial Transcript, May 4, 1999, 4-7). The prosecution further asserted that the evidence was relevant to demonstrate a "plan,

7

scheme, and method of operation." (Tr. 7). Finding that the evidence was relevant to the issues of intent and motive and "not so prejudicial it would sweep a rational consideration of the defendant's innocence or guilt of the crime, the jurors would be swept away by this testimony," the trial judge permitted the evidence to be presented subject to a curative instruction. (Tr. 13-14). The judge's instruction to the jury regarding this evidence was as follows:

> Ladies and gentlemen, you are about to hear evidence that will be introduced to show the defendant committed a crime for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether the evidence tends to show the defendant specifically meant to kill in this case. You must not consider the evidence for any other purpose.
>
> For example, you must not decide that it shows the defendant is a bad person or he's likely to commit crimes. You must not convict the defendant because you think he's guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime or you must find him not guilty.

(Trial Transcript, May 6, 1999, 9-10).

With respect to this issue, the Michigan Court of Appeals concluded as follows:

> Consequently, whether defendant possessed the requisite intent to assault a jail employee, and whether he knew the individual he disarmed was a peace officer were contested issues at trial. The prosecution was required to show not only that defendant intended to rob and kill the deputy, but that he assaulted and disarmed the deputy fully aware of his status as a peace officer and jail employee. Defendant further placed his intent and knowledge at issue by advancing an amnesia defense. The evidence relating to defendant's subsequent acts, although remote in time, tended to refute defendant's allegations that he was unaware he was assaulting, robbing and disarming a peace officer. Although we acknowledge that this evidence had the potential of prejudicing defendant, the tendency of the evidence to prove that defendant knowingly committed the charged crimes outweighed the risk, especially in light of defendant's purported claim of amnesia. Moreover, the jury

>received an appropriate limiting instruction. Therefore, we are not convinced that the trial court abused its discretion in admitting this evidence.

*People v. Lawson*, No. 220406, Opinion at 3 (Mich. Ct. App., Apr. 20, 2001).

The Michigan Court of Appeals reasonably concluded that the evidence in question had been properly admitted. Thus, Petitioner cannot establish that the admission of this evidence denied him due process or the right to a fair trial. Accordingly, this claim presents no issue on which habeas relief may be granted.

**II.        Sentencing Claim**

Petitioner asserts that "there were a number of representations contained within the presentence report that defense counsel attempted to have stricken, because that misinformation would increase [his] sentencing range and inhibit the availability of parole or probation." Specifically, Petitioner asserts that in imposing sentence the trial court improperly considered the following: (1) a charge of assault with intent to do great bodily harm that was "nolle prossed" as part of a plea agreement; (2) a charge for assault and battery that was "nolle prossed" as part of a plea agreement; (3) a charge of possession of less than 25 grams of narcotics that was "nolle prossed" as part of a plea agreement; (4) a charge of carrying a concealed weapon that was subsequently dismissed; (5) another charge of carrying a concealed weapon that was dismissed pursuant to a plea agreement; (6) a charge of receiving and concealing stolen property over $100 that was dismissed pursuant to a plea agreement; (7) a prowling and loitering charge that was dismissed; and (8) a charge for frequenting a gambling establishment that was subsequently dismissed. Petitioner asserts that consideration of this information constituted a violation of his right to due process.

It has long been recognized that when imposing sentence, "courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997); *see also*, *Roberts v. United States*, 445 U.S. 552, 556 (1980) (a "fundamental sentencing principle" is that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

As the *Watts* Court further observed, "[h]ighly relevant - if not essential - to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and circumstances." *Watts*, 519 U.S. at 151-52. Sentencing courts may even consider past criminal behavior which did not result in a conviction, or for which the defendant was never tried. *See Id.* at 152 (citations omitted); *Collins v. Buckhoe*, 493 F.2d 343, 345 (6th Cir. 1974) (citations omitted).

Sentences imposed on the basis of "misinformation of constitutional magnitude," however, may present grounds for habeas corpus relief. *Roberts*, 445 U.S. at 556 (citations omitted). To prevail on a claim that he was sentenced on the basis of such misinformation, Petitioner must establish that "the disputed information was materially false and that the trial court relied on the information." *United States v. Andrews*, 240 F.Supp.2d 636, 638 (E.D. Mich. 2003) (quoting *Buckhoe*, 493 F.2d at 345-46).

Petitioner does not dispute that he was actually charged with the various offenses identified above. Thus, he cannot demonstrate that the information in question is false. As noted above, moreover, the Constitution is not implicated by the consideration of crimes of which Petitioner was charged but never tried or convicted. Finally, the trial judge expressly stated at sentencing that he had not considered these particular incidents in crafting Petitioner's sentence.

(Sentencing Transcript, June 7, 1999, 3-5).  Accordingly, this claim raises no issue upon which habeas relief may be granted.

### III.        Ineffective Assistance of Counsel Claim

Prior to jury selection in this matter, Petitioner requested that the Court provide an instruction regarding Petitioner's alleged diminished capacity. (Trial Transcript, May 4, 1999, 15). Petitioner also requested that he be permitted to question the jurors about the issue. (Tr. 15). The trial court denied Petitioner's request on the ground that there existed no evidence supporting such an instruction. (Tr. 18-19). Petitioner asserts that his trial attorney rendered ineffective assistance by failing "to insure that an evaluation was done of [his] diminished capacity to insure that it could be used as a defense."

To establish that he was denied the right to the effective assistance of counsel, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688.  In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. Petitioner must further establish that his attorney's performance was prejudicial in that it denied him a fair trial. *Id.* at 687.  This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so <u>manifestly</u> ineffective that defeat was snatched

11

from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original).

Well before trial in this matter, Petitioner's counsel moved to have Petitioner undergo a mental competency examination. (Dkt. #15, 16). On October 8, 1998, the trial court conducted a hearing at which Petitioner and Ronald Louis, Ph.D., the psychologist who examined Petitioner, testified. (Hearing Transcript, Oct. 8, 1998). Petitioner was represented by counsel at this hearing and was able to cross-examine Dr. Louis. The doctor testified that there was no evidence that Petitioner suffered from "mental illness or mental retardation." (Tr. 7). Dr. Louis further testified that is was not "a particularly close call." (Tr. 8-9). With respect to Petitioner's claim of amnesia, the doctor testified that "there's just no rational foundation for it" and "no evidence of any kind that's convincing for it." (Tr. 24-25). At the conclusion of the hearing, the court found that "there is sufficient evidence to conclude the defendant is competent to stand trial." (Tr. 42). With respect to this particular claim, the Michigan Court of Appeals concluded that:

> Defendant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. Rather, our review of the record reveals that counsel took steps to ensure that the issue of diminished capacity was investigated. Moreover, the reports prepared by the examining psychologists adequately addressed the issue. The mere fact that the trial court subsequently denied defendant's request for an instruction on diminished capacity does not render counsel's assistance ineffective, especially because the record evidence did not support such an instruction.

*People v. Lawson*, No. 220406 at 3 (Mich. Ct. App., Apr. 20, 2001).

In light of the authority herein identified, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, its decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, this claim presents no issue on which habeas corpus relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Lawson's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                    Respectfully submitted,

Date: March 3, 2008                    /s/ Ellen S. Carmody
                                             ELLEN S. CARMODY
                                             United States Magistrate Judge